KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

MOHAMMAD KHATIB
MARGARET C. NAMMAR #9045
Assistant United States Attorneys
WILLIAM GULLOTTA
Trial Attorney, Public Integrity Section
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Mohammad.Khatib@usdoj.gov
        Margaret.Nammar@usdoj.gov
        William.Gullotta2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 22-00058 JAO |
| | ) | |
| Plaintiff, | ) | UNITED STATES OF AMERICA'S |
| | ) | NOTICE OF INTENT AND MOTION |
| vs. | ) | TO ADMIT EVIDENCE UNDER FED. |
| | ) | R. EVID. 404(b); CERTIFICATE OF |
| PAUL JOSEPH SULLA, JR., | ) | SERVICE |
| GARY CHARLES ZAMBER, and | ) | |
| RAJESH P. BUDHABHATTI, | ) | |
| | ) | Trial Date:  May 12, 2025 |
| | ) | Judge:  Hon. Jill A. Otake |
| Defendants. | ) | |
| | ) | |
| | ) | |

## UNITED STATES OF AMERICA'S NOTICE OF INTENT AND MOTION
## TO ADMIT EVIDENCE UNDER FED. R. EVID. 404(b)

The United States of America hereby provides notice under Rule 404(b) of the Federal Rules of Evidence of its intent to admit two categories of evidence at trial: (1) a prior Affordable Housing Agreement ("AHA") fraudulently obtained by ERH1 LLC, a company owned and controlled by Budhabhatti; and (2) the reprimand that Sulla received from the Hawaiʻi Supreme Court's Office of Disciplinary Counsel ("ODC"), which became effective on or about March 17, 2023. As to the first category, the United States believes that that evidence is not "other acts" evidence subject to the limitations of Rule 404(b) of the Federal Rules of Evidence because the transaction falls within the scheme with which the defendants are charged.[1] However, in the exercise of complete caution, the United States is providing notice that it may seek admission of this evidence under Rule 404(b). Both categories of evidence are properly admitted under Rule 404(b).

## I.    BACKGROUND

The defendants are charged in the Second Superseding Indictment with one count of conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349 (Count 1) and nine counts of honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Counts 2 – 10). Sulla is also charged in Count 11 with

---

[1] The United States has prepared a motion *in limine* explaining the basis for admission outside of Rule 404(b)'s framework.

concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  [ECF
No. 142].

The Court, in its August 6, 2024 Order denying Budhabhatti's second
motion to dismiss, summarized the allegations underlying the charges as follows:

> Defendants allegedly worked with Alan Scott Rudo ("Rudo"), not
> charged in the instant case, to deprive the County of Hawaiʻi ("County") and
> its citizens of their intangible rights to Rudo's honest services while he
> worked for the County's Office of Housing and Community Development
> ("OHCD") as a Housing and Community Development Specialist between
> September 2006 and December 2018.  [ECF No. 142] ¶ 8.
>
> Among other requirements, the County mandates that residential
> developers build a certain number of affordable housing units in their
> projects or nearby their projects, or that the developers sell to the County or
> non-profit organizations land with infrastructure that would support the
> requisite affordable housing.  *Id.* ¶¶ 4–5.
>
> Based on the number of affordable housing units they develop,
> residential developers can earn Affordable Housing Credits ("AHCs") that
> they can sell or transfer to other developers to satisfy the affordable housing
> requirements in those other developers' projects.  *Id.* ¶ 6.  AHC transfers and
> sales are subject to County approval.  *Id.*  To obtain final approval from the
> County for a project, developers and the County need to enter into
> Affordable Housing Agreements ("AHAs") that either (1) specify the
> number of affordable housing units the developers will build or (2) allow the
> use of excess AHCs.  *Id.* ¶ 7.
>
> Rudo's job at OHCD was to ensure that residential developers
> complied with the County's affordable housing requirements and to
> recommend whether the County should agree to AHAs and whether the
> County should accept land conveyances to provide affordable housing.  *Id.* ¶
> 8.  While employed by the County, Rudo owed a fiduciary duty of honesty
> and loyalty to the County to act in its interest, and not for personal
> enrichment, and he was forbidden from taking official actions in which he
> had a personal financial interest.  *Id.* ¶ 9.

3

The Government's basic allegation is that Defendants and Rudo "devised and entered into a corrupt agreement to pay bribes and kickbacks to Rudo in exchange for his official acts related to AHCs and AHAs." *Id.* ¶ 10. The four men used "sham development companies" Luna Loa Developments, LLC ("Luna Loa"), West View Developments, LLC ("West View"), and Plumeria at Waikoloa, LLC ("Plumeria", and collectively with West View and Luna Loa, the "Companies") to execute and conceal their corrupt scheme. *Id.* The Companies each were associated with their own development property—Luna Loa with South Kohala; West View with Kailua-Kona; and Plumeria with Waikoloa. *See id.* ¶¶ 18–28, 29–38.

The Companies obtained AHAs—which Rudo helped draft and approve— through which they acquired and distributed AHCs, land, and money, with an aggregate value of at least $10,980,000. *Id.* ¶ 14a–d. The Companies did not develop any affordable housing units as promised. *Id.* Rather, they sold or transferred the AHCs and land on the open market, and distributed the proceeds among Defendants and Rudo, "with Rudo's share constituting bribes and kickbacks received in return for his official acts in obtaining the County's approval of the AHAs and the transfer of AHCs." *Id.* ¶¶ 10, 14e. Defendants and Rudo "concealed that Rudo's official acts on behalf of the County were tied to a corrupt agreement to accept bribes and kickbacks," and further hid the scheme that they employed, through which Rudo "actually received and attempted to receive bribes and kickbacks totaling at least $1,817,716." *Id.* ¶ 14f.

[ECF No. 212, PageID.1612-14].

## II.    <u>SUMMARY OF PROFFERED EVIDENCE</u>

### a. Test Run of Honest Services Fraud Scheme Using ERH1

The United States hereby notices its intent to introduce evidence that

Budhabhatti and Zamber, in concert with Alan Rudo, conducted an earlier test run

of the charged honest services fraud scheme. On May 20, 2014, two tax deeds

were recorded for the conveyance of two one-acre parcels of land in Keaʻau ("the

Parcels") to Budhabhatti. On September 24, 2014, ERH1 LLC was registered in Hawaii as a member managed limited liability corporation with Budhabhatti as its manager. On October 6, 2014, the County of Hawaii ("the County") entered into an AHA with ERH1 LLC regarding the Parcels. The County executed the agreement upon the advice and recommendation of Alan Rudo. Budhabhatti signed the AHA on behalf of ERH1 as "its Manager."

Under the terms of the AHA, ERH1 was required, as the "developer," to construct a minimum of two affordable housing rental units on the Parcels. In exchange, the County awarded ERH1 four excess affordable housing credits ("AHCs"). The County instructed Budhabhatti to record the AHA with the Bureau of Conveyances, but he did not do so.

On November 6, 2014, the County approved an Agreement for Assignment of Affordable Housing Credits between ERH1 and Renaissance Development LLC. The County approved the agreement upon the advice and recommendation of Alan Rudo. Budhabhatti signed the agreement on behalf of ERH1.

The assignment agreement transferred ERH1's four excess AHCs to Renaissance for $68,000. As previously agreed, Budhabhatti paid Zamber and Rudo a portion of the proceeds from that sale with Rudo's portion constituting a bribe or kickback in exchange for his official acts related to ERH1.

Budhabhatti later sold both of the Parcels without building any affordable housing. The warranty deeds conveying the Parcels to the new owners omitted the fact that the properties were subject to an AHA with the County.

### b. ODC Reprimand of Sulla

The United States also notices as other acts evidence the reprimand that Sulla received from the Hawaiʻi Supreme Court's Office of Disciplinary Counsel ("ODC"), which became effective on or about March 17, 2023. Specifically, the ODC determined that there was clear and convincing evidence that on February 13, 2019, Sulla made misrepresentations to the court during a hearing in the land dispute case of *John D. Prebula* v. *Tobby James Mazzie, etc.*, Civil No. 14-1-0265, State of Hawaii Circuit Court of the Third Circuit.

The ODC found that Sulla falsely stated to the court in the *Prebula* matter: "I didn't record any deed. There is no deed recorded by me. All this was done before our office got involved." In fact, as Sulla admitted to the ODC, he had drafted and caused the referenced warranty deed to be filed in 2014. Although Sulla claimed his misrepresentations to the court were "mistaken and unintentional," the ODC determined that he had violated Hawaiʻi Rule of Professional Conduct 8.4(c), which provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

6

### III.   **APPLICABLE LAW**

Rule 404(b) prohibits the introduction of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," but permits such evidence for other purposes including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The Ninth Circuit has repeatedly held that "[Rule 404(b)] is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982); *see also United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (*en banc*) ("Rule 404(b) is a rule of inclusion—not exclusion"). The following factors determine the admission of evidence under Rule 404(b):

> (1) it is "introduced to prove a material issue in the case," (2) in some instances, the acts are "similar to the offense charged," (3) "sufficient evidence [exists] for the jury to find that the defendant committed the other act(s)," and (4) the other act(s) are "not ... too remote in time."

*United States v. Blitz*, 151 F.3d 1002, 1008 (9th Cir. 1998) (citations omitted). Once it has been established that the evidence offered serves a legitimate non-propensity purpose, "the "only" conditions justifying the exclusion of the evidence are those described in Rule 403." *Curtin*, 489 F.3d at 944.

//

7

IV.    **ARGUMENT**

    **a. The ERH 1 Evidence Is Admissible Under Rule 404(b)**

Evidence of the ERH1 fraud is admissible pursuant to Rule 404(b) for the non-propensity purpose of proving opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake with respect to the benefits obtained and bribes and kickbacks paid in the course of the charged honest services fraud conspiracy and scheme. The Ninth Circuit has previously concluded that evidence of uncharged frauds is admissible under Rule 404(b). *See, e.g.*, *United States v. Hicks*, 217 F.3d 1038, 1046-47 (9th Cir. 2000), *as amended on denial of reh'g* (July 31, 2000); *United States v. Jenkins*, 785 F.2d 1387, 1395-96 (9th Cir. 1986).

Here, all four criteria for admissibility under Rule 404(b) are met. First, the evidence is material. It helps establish that Budhabhatti and Zamber knowingly agreed to join the conspiracy and knowingly participated in the honest services fraud scheme. Their involvement was not just some mistake or accident. The evidence of the ERH1 test run also provides evidence of preparation and planning to engage in the charged conduct. And showing the jury that the defendants had previously and then subsequently made some of the same material omissions and misrepresentations demonstrates that the charged acts were done according to the same plan, with the same motive and with knowledge and intent to defraud—they

knew how to get AHAs approved based on bribes and kickbacks in connection with lies and omissions that defrauded the County.  It was their plan.

Second, the evidence is close in time to the charged conduct.  The Ninth Circuit has affirmed the admission of Rule 404(b) evidence where ten years or longer periods of time have passed.  *See, e.g.,  United States v. Estrada*, 453 F.3d 1208, 1213 (9th Cir. 2006) (citing cases).  Here, the conduct at issue predates the charged conduct by a mere month, which is well within the acceptable time period under Ninth Circuit precedent.

Third, the evidence will be based on witness testimony with first-hand knowledge of the events and corroborating documents such as County records, bank records of payments, emails and letters.  This more than satisfies the evidentiary standard necessary for admission under Rule 404(b), which merely requires that the jury be able to "reasonably conclude that the act occurred and the defendant was the actor." *Huddleston v. United States*, 485 U.S. 681, 689 (1988); *see also United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (the "reliability threshold is not a high one, and the testimony of a single witness can be sufficient") (citations omitted).

Fourth, the requirement for similarity is not a prerequisite in all circumstances but is based on the purpose of admission.  Thus, the Ninth Circuit has held that, with respect to proving knowledge, "the other acts need not be

similar to the charged acts as long as they tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." *Blitz*, 151 F.3d at 1008 (citations and internal quotations omitted). Further, even when some similarity is required, such as in proving intent, identity, or absence of mistake, the "past conduct need not be identical to the conduct charged, but instead need only be similar enough to be probative of intent." *Johnson*, 132 F.3d at 1283. This is so because "similarity, like proximity in time, is not a prerequisite having independent force, but rather a factor pertinent to rational appraisal of the probative value of the evidence in relation to the purpose for which it is being offered." *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326 (9th Cir. 1992). Thus, the lens by which the similarity is viewed is appraising the probative value of the evidence. Here, the evidence is highly probative to the purpose for which it is being offered.

As to the final consideration, the probative value of the 404(b) evidence will not be "substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. As the Ninth Circuit and other courts have repeatedly recognized, all evidence "unfavorable" to a defendant is, by definition, "prejudicial." But that does not mean it is inadmissible under Rule 403. *See Blitz*, 151 F.3d at 1009; *United States v. Simas*, 937 F.2d 459, 464 (9th Cir. 1991) (finding although 404(b) evidence was "damaging," it did not cause unfair prejudice); *United States v.*

*Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977) (404(b) evidence still admissible even though "highly prejudicial" as the "best evidence often is"). Rather, "unfair prejudice is measured by the extent to which the testimony makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Ramirez-Jiminez*, 967 F.2d at 1327 (citations and internal quotations omitted); *see also* FED. R. EVID. 403 Adv. Comm. Note) (evidence that is unfairly prejudicial is that which causes "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Evidence of another fraudulent AHA obtained by bribing the same public official fits squarely within the charged offenses. It is precisely the similarity of the ERH1 AHA that increases, not decreases, its probative nature and its relevance in showing knowledge, intent or *modus operandi*. Accordingly, it will not so inflame the jury to cause an emotional reaction or cause the jury to convict "wholly apart" from the evidence of guilt. *See Ramirez-Jiminez*, 967 F.2d at 1327 (finding evidence was "prejudicial only to the extent that it tends to prove the fact justifying its admission, namely that appellant had knowledge" of criminal conduct). Moreover, whatever risk of prejudice may exist can be addressed through proper instructions, which "juries are presumed to follow." *Zafiro v. United States*, 506

11

U.S. 534, 540-41 (1993). Thus, because the probative value of the evidence discussed above is not substantially outweighed by the danger of unfair prejudice, it is admissible under Rule 404(b).

### b. The ODC's Reprimand of Sulla Is Also Admissible Under Rule 404(b)

Likewise, the ODC's reprimand of Sulla for dishonesty before a court is admissible under Rule 404(b). First, the evidence is material. It helps establish that Sulla knowingly agreed to join a conspiracy and knowingly participated in a scheme with the intent to defraud the County of its right to Rudo's honest services. Similarly, the ODC reprimand further tends to establish that Sulla's involvement in the conspiracy and scheme was not just some mistake or accident, but rather that he chose to engage in a conspiracy and scheme to defraud with Rudo and his co-defendants. Issues of knowledge and intent will be hotly contested at trial. Second, the evidence is contemporaneous in time to the charged conduct. Sulla's false statements to the court occurred within the conspiracy period. Third, the evidence is based on disciplinary records provided by the ODC following their investigation, which exceeds the evidentiary standard necessary for admission under Rule 404(b). Fourth, Sulla's lies to an officer of the judicial branch of County government in a land dispute is closely related to his misstatements and omissions to an executive agency of the same County relating to the South Kohala, Kailua-Kona and Waikoloa properties in this case. In fact, Sulla's misstatement

regarding who recorded the deed in the *Prebula* matter mirrors a false warranty deed presented to the OHCD that enabled Plumeria to acquire the Waikoloa property by misrepresenting the company as a non-profit.  At the very least, the evidence is sufficiently similar to be probative.  *See Johnson*, 132 F.3d at 1283. Finally, the probative value of the evidence is not substantially outweighed by the prejudicial effect.  Evidence that Sulla told other lies on another occasion will not so enflame the jury in a fraud trial as to lead them to convict for an improper reason.  Again, the United States has proposed an appropriate limiting instruction to minimize the risk of unfair prejudice.

//

//

//

//

//

//

//

//

//

//

//

## V.    <u>CONCLUSION</u>

Accordingly, the United States hereby provides notice to the defendants of its intent to offer the above evidence and moves for its admission pursuant to FED. R. EVID. 404(b).

DATED:  April 7, 2025, at Honolulu, Hawaii.

Respectfully submitted,

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

By /s/Mohammad Khatib
   MOHAMMAD KHATIB
   MARGARET C. NAMMAR
   Assistant U.S. Attorneys
   WILLIAM GULLOTTA
   Trial Attorney
   Public Integrity Section
   U.S. Department of Justice

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on the following

counsel on the date and in the manner described below:

Served Electronically through CM/ECF:

BIRNEY BERVAR, ESQ.
Attorney for Defendant
PAUL JOSEPH SULLA, JR.

GARY K. SPRINGSTEAD, ESQ.
Attorney for Defendant
GARY CHARLES ZAMBER

SALINA KANAI, FPD
MELINDA YAMAGA, AFPD
Attorneys for Defendant
RAJESH P. BUDHABHATTI

DATED:  April 7, 2025, at Honolulu, Hawaii.

/s/ Mohammad Khatib
Assistant U.S. Attorney